UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MYRON HUFFMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:24-cv-01674-SEB-MKK |
| ) | |
| HANCOCK REGIONAL HOSPITAL d/b/a ) | |
| HOOVERWOOD, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

Plaintiff Myron Huffman, by and through his Attorney-in-Fact Michelle White, brought this action against Defendants Hancock Regional Hospital d/b/a Hooverwood and Indianapolis Jewish Home, Inc., pursuant to the Omnibus Budget Reconciliation Act of 1987 ("OBRA") and the Federal Nursing Home Reform Act ("FNHRA"), 42 U.S.C. § 1396 *et seq.*, enforceable under 42 U.S.C. § 1983,[1] stemming from injuries suffered due to complications of a knee surgery which were aggravated by a fall at Defendants' nursing facility. Now before the Court is Defendants' Motion to Dismiss Plaintiff's Claims. For the reasons stated below, that motion is **GRANTED IN PART AND DENIED IN PART**.

---

[1] Plaintiff also brought a § 1983 claim based on alleged violations of the Fourteenth Amendment, which claim Defendants also moved to dismiss. However, in his Response to Defendants' Motion to Dismiss, dkt. 26, Plaintiff states that he does not intend to pursue his Fourteenth Amendment claim, and therefore does not address it. Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment claim is therefore **GRANTED**.

1

## BACKGROUND

### I. Factual Background

Hooverwood is a long-term nursing care facility located in Indianapolis, Indiana, which is owned and operated by Hancock Regional Hospital. Hooverwood is operated and managed by Indianapolis Jewish Home, Inc., an Indiana corporation.

On October 13, 2022, Myron Huffman ("Mr. Huffman") was admitted to Hooverwood for nursing services following a knee replacement surgery. When he was admitted, "Mr. Huffman was noted to be dependent on staff to assist with daily self-care." Am. Compl. ¶ 19, dkt. 17. Two days later, on October 15, Mr. Huffman fell from his wheelchair, and was subsequently admitted to Ascension St. Vincent Hospital Indianapolis. As averred in the Complaint, Mr. Huffman was unsupervised at the time of his fall. While at Ascension St. Vincent, "a large amount of bleeding from Mr. Huffman's surgery wound was noted." *Id.* at ¶ 20. Mr. Huffman returned to Hooverwood the following day, October 16.

Over the next 12 days, the condition of Mr. Huffman's surgery wound continually worsened, and he was consequently readmitted to Ascension St. Vincent on October 28, where he underwent surgery to repair his replaced knee. Unfortunately, the wound on his knee become infected, and it ultimately became necessary to amputate.

During the relevant period, the Complaint alleges that Hooverwood was understaffed, and that it therefore failed to provide services with reasonable accommodations to the individual needs of Mr. Huffman, which included his being largely dependent on staff following his knee surgery upon admission to Hooverwood on

October 13. The complaint further alleges, *inter alia*, that Hooverwood failed to implement policies which would prohibit the mistreatment and abuse of residents; that they failed to inform residents, including Mr. Huffman, in advance about care and treatment or changes to their plan of treatment; and that they failed to maintain adequate clinical records on residents such as Mr. Huffman, including the development of comprehensive care plans based on periodic resident assessments, as required by the FNHRA. *Id.* at ¶ 31.

## II.   Procedural Background

Plaintiff originally filed this lawsuit on September 25, 2024, against Hancock Regional Hospital d/b/a Hooverwood and Indianapolis Jewish Home, Inc. Dkt. 1. The original complaint alleged seventeen violations of the FNHRA, all arising under subsections (b) and (d) of the statute. Plaintiff amended his Complaint on November 19, 2024, to allege only fifteen violations of the FNHRA, each alleged to have arisen under subsection (c) of the statute. Dkt. 17. In major respects, the substance of the allegations did not change between the Original and Amended Complaints, most of which were repeated verbatim from the Original Complaint but with citations to subsection (c) as opposed to (b) or (d).

On December 3, 2024, Defendants filed a Motion to Dismiss for Failure to State a Claim, challenging the sufficiency of Plaintiff's claims on the grounds that no private right of action exists under the FNHRA, and that, even if a private right of action did exist, said claims are not adequately pled. Dkt. 19. Plaintiff filed a response on December

23, 2024. Dkt. 26. Defendants filed no reply; thus, the motion is fully briefed and ripe for ruling.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that complaints contain "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A detailed account of all relevant facts is not required, rather, the claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). To provide such notice, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim becomes facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When ruling on a motion to dismiss, courts must construe "all well-pleaded allegations of the complaint as true and view[] them in the light most favorable to the plaintiff." *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000). However, this construal is limited to factual allegations; "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). While "[a]s a general rule . . . notice pleading remains the standard," *Bausch v. Stryker Corp.*, 630 F.3d 546, 559 (7th Cir. 2010) (quoting *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 667 (7th Cir. 2008)), "Rule 8 . . . does not unlock the door

4

of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

The aim of Rule 12(b)(6) is not to test the legal merits of a plaintiff's claims. "[T]he complaint need not identify a legal theory, and specifying an incorrect legal theory is not fatal." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). However, if the violation of law a plaintiff alleges does not create a right of action that would result in the defendant's liability, 12(b)(6) dismissal is appropriate. *Neitzke v. Williams*, 490 U.S. 319, 326–27 ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law.").

## DISCUSSION

The FNHRA, 42 U.S.C. § 1396r, which is part of the Omnibus Budget Reform Act of 1987, establishes standards for the administration of facilities and the rights of residents in Medicaid participating nursing homes. *Health and Hosp. Corp. v. Talevski*, 599 U.S. 166, 171 (2023). Section 1396r sets forth requirements by which nursing facilities must abide in three operative subsections: (b), (c), and (d). These subsections are respectively titled "[r]equirements relating to provision of services," "[r]equirements relating to residents' rights," and "requirements relating to administration and other matters." 42 U.S.C. § 1396r(b)–(d).

The Supreme Court, in *Health and Hospital Corporation of Marion County v. Talevski*, 599 U.S. at 171–72, recently held that the subsection of the FNHRA codified at 42 U.S.C. § 1396r(c), titled "[r]equirements relating to residents' rights," creates enforceable rights under which individual plaintiffs can bring § 1983 claims. In reaching

5

this decision, the Supreme Court applied the test for congressional referral of individual rights of action laid out in *Gonzaga University v. Doe*, which looks to whether the statute is "phrased in terms of the persons benefitted" and contains "rights-creating" language, 536 U.S. 273, 284 (2002) (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 691–92 (1979)). Following *Talevski*, two district courts in our circuit presented with the question of whether the remaining subsections of §1396r create private rights of action have held that unlike subsection (c), subsections (b) and (d) do not create individually enforceable rights, as they do not meet *Gonzaga*'s standard for an "unambiguous" congressional conferral of private rights of action. *Est. of Tester v. Vill. at Hamilton Pointe, LLC*, No. 3:24-cv-00005, 2024 WL 4433040 (S.D. Ind. Sept. 20, 2024); *Villegas v. Hancock Reg'l Hosp.*, No. 2:24-cv-104, 2024 WL 4581170 (N.D. Ind. Oct. 23, 2024).

We agree with the analysis and the conclusion reached in *Tester* and *Villegas* that § 1396r(b) and § 1396r(d) do not create individual rights of action enforceable via § 1983 under the *Gonzaga* test. To create such rights, Congress must "*unambiguously* confer individual federal rights" in the statutory language. *Talevski*, 599 U.S. at 180 (emphasis in original). Neither subsection (b) nor (d) satisfies this "demanding bar." *Id.* First, the titles of both subsections use language that distinctly focuses on the requirements placed on nursing facilities: Subsection (b) is titled "[r]equirements relating to provision of services," and (d) is titled "[r]equirements relating to administration and other matters." 42 U.S.C. § 1396r(b), (d). Second, the requirements and prohibitions set forth in subsections (b) and (d) focus "on the person regulated rather than the individuals protected," which supports an inference that Congress had no "intent to confer rights on a

6

particular class of persons." *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) (quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981)).

While some provisions in subsections (b) and (d) do impact residents' quality of life, *e.g.* 42 U.S.C. § 1396r(d)(1)(A), the language used in those subsections is not focused on the rights or expectations of nursing home residents; rather, these subsections set forth standards that account for elements like "practicability" for the nursing facility, and direct the nursing home in subjects such as administration and the use of its resources, *id*. Thus, subsections (b) and (d) lack subsection (c)'s clear focus on the *rights* of residents, a distinction made all the more clear by the structure of the statutory scheme. "If Congress intended to create federally enforceable rights for individual nursing home residents in §§ 1396r(b) and 1396r(d) like they did in § 1396r(c), the provisions would have likely been placed together." *Villegas*, 2024 WL 4581170, at *4.

For these reasons, we join our sister district courts in finding that it is not "unambiguously clear" that Congress intended to create individual rights under subsections (b) and (d) of § 1396r enforceable under § 1983. Accordingly, regardless of the labels Plaintiff has placed on his theories of recovery in the Amended Complaint, to the extent that his factual allegations implicate subsections (b) or (d) as opposed to (c), such allegations fail to state a claim upon which relief may be granted. We turn next to address which of Plaintiff's theories of recovery, if any, survive dismissal.

### A. Claims arising under 42 U.S.C. § 1396r(b), (d)

Applying the analysis set forth in *Tester* and *Villegas*, Defendants' principal contention in their Motion to Dismiss is that, although labeled in the Amended Complaint

7

as violations of § 1396r(c), Mr. Huffman's factual allegations, even if true, implicate only subsections (b) or (d) of the statute, under which, as we have determined, there exists no private right of action. As Defendants argue, Mr. Huffman's theories of recovery set forth in subparagraphs 31(b)–(e), (g)–(m), and (o) of the Amended Complaint, which are copied verbatim from the Original Complaint, parrot language pulled directly from § 1396r(b) and (d) of FHNRA and/or the corresponding federal regulations.[2] Plaintiff's attempt to repackage these claims into alleged violations of § 1396r(c) is unavailing as his underlying factual allegations, which involve Hooverwood's alleged failures to, *inter alia*, certify or re-certify nursing staff, implement written policies and procedures prohibiting abuse, mistreatment, or deliberate indifference, or to provide care necessary to "allow Mr. Huffman to attain or maintain the highest practicable physical, mental and psychosocial well-being," Am. Compl. ¶ 31(g), dkt. 17, are drawn directly from statutory provisions that we, along with the *Tester* and *Villegas* courts, have held do not create a private right of action. Plaintiff's theories of recovery set forth in subparagraphs 31(b)–(e), (g)–(m), and (o) of the Amended Complaint therefore cannot survive dismissal.

### B.  Claims arising directly under 42 U.S.C. § 1396r(c)

Mr. Huffman's theories of recovery set forth in subparagraphs 31(a), (f), and (n) of the Amended Complaint, namely, that Hooverwood failed to provide nursing care

---

[2] Although Plaintiff cites various federal regulations in the Amended Complaint, he points to no statutory text or case law suggesting that he may sue for an alleged violation of those regulations. *See Kriley v. Northwestern Mem. Healthcare*, No. 22-1606, 2023 WL 371643, at *2 (7th Cir. Jan. 24, 2023) (observing that the Supreme Court has upheld a private right of action under a federal regulation "only because of the longstanding acceptance by the courts of the right and Congress's inaction to correct them") (quotation marks and citation omitted).

services with reasonable accommodations to his individual needs, that it failed to provide him with adequate notice regarding his treatment plan and changes thereto, and that it failed to maintain his clinical records and those of other residents, if properly pleaded, do arise under § 1396r(c), for which there is a private right of action. Defendants argue that these theories of recovery should nonetheless be dismissed because Plaintiff has failed to plead sufficient facts to plausibly allege any violation of § 1396r(c). For the reasons detailed below, we find that the Amended Complaint contains sufficient factual allegations to plausibly state a violation of § 1396r(c) based on the theory of recovery set forth in subparagraph 31(a), but not in subparagraphs 31(f) or (n).

Subparagraph 31(a) of the Amended Complaint alleges a violation of § 1396r(c)(1)(A)(v)(I) of the FNHRA, which provides that nursing home residents have the right "to reside and receive services with reasonable accommodation of individual needs and preferences, except where the health or safety of the individual or other residents would be endangered." 42 U.S.C. 1396r(c)(1)(A)(v)(I). The factual allegations in the complaint suffice to state a claim for which relief could be granted under this provision. Mr. Huffman alleges that he needed staff assistance with daily self-care, that Hooverwood was understaffed, that this lack of staff prohibited Hooverwood from providing him with a reasonable accommodation of his individual need for consistent staff assistance, and that this lack of assistance ultimately resulted in injuries from his unsupervised fall. This is "a story that holds together" for purposes of 12(b)(6). *Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir. 2010). Mr. Huffman's claim goes beyond mere "formulaic recitation of the cause of action's elements," *Bell Atl. Corp. v. Twombly*, 550

9

U.S. 544, 555 (2007), and provides a set of facts that, if true, suggest Defendants could be liable under subsection (c)(1)(A)(v)(I).

Subsection (c) also grants residents "the right . . . to be fully informed in advance about care and treatment . . . and (except with respect to a resident adjudged incompetent) to participate in planning care and treatment or changes in care and treatment," as well as "the right . . . to access to current clinical records of the resident upon request by the resident or the resident's legal representative, within 24 hours (excluding hours occurring during a weekend or holiday) after making such a request." 42 U.S.C. § 1396r(c)(1)(A)(i), (iv). Mr. Huffman makes allegations sounding in both of these provisions in subparagraphs 31(f) and (n) of the Amended Complaint, to wit, that Hooverwood failed to allow residents to be fully informed in advance about their treatment and care, including any changes thereto, in violation of § 1396r(c)(1)(A)(i), and that Hooverwood failed to maintain clinical records on its patients, which, reading the Amended Complaint generously, is a necessary predicate to a patient exercising his or her right to access said records, as set forth in § 1396r(c)(1)(A)(iv). Neither of these alleged violations of § 1396r(c), however, are pleaded beyond mere legal conclusions and a bare recitation of the language of the statute.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679. Mr. Huffman alleges in subparagraphs (f) and (n) of his complaint only that Hooverwood failed to "allow patients such as [himself] to be fully informed about care and treatment" or changes to such treatment, as well as to "maintain clinical records on all residents." Am.

10

Compl. ¶ 31(f), (n), dkt. 17. These conclusory allegations, without reference to any specific instance(s) in which, for example, Mr. Huffman requested medical records and was denied access to them, or experienced changes in his treatment plan that would trigger his right to notice about such changes, much less any facts to suggest that his injuries were the result of such failures, are insufficient to state a plausible claim for relief under § 1396r(c)(1)(A)(i) or (c)(1)(A)(iv). Accordingly, because the Amended Complaint fails to provide any factual detail to nudge the potential for Defendant's liability due to their failure to maintain clinical records or to inform Plaintiff of his treatment plan "across the line from conceivable to plausible," such claims cannot survive dismissal. *Twombly*, 550 U.S. at 570.

## CONCLUSION

For these reasons, Defendants' Motion to Dismiss, dkt. 19, is **GRANTED** as to Plaintiff's theories of recovery set forth in subparagraphs 31(b)–(o) of the Amended Complaint and **DENIED** as to Plaintiff's claim alleged in subparagraph 31(a). The dismissed theories of recovery are dismissed without prejudice. The case will proceed accordingly.

IT IS SO ORDERED.

Date: 6/25/2025

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Robert Daniell
Smith Clinesmith, LLP
rdaniell@fightingelderabuse.com

Bradley Needham
Smith Clinesmith, LLP
bneedham@fightingelderabuse.com

Katie R. Osborne
RILEY BENNETT EGLOFF LLP
kosborne@rbelaw.com

Jacob Runyon
Smith Clinesmith, LLP
jacob@fightingelderabuse.com

Mary H. Watts
SMITHAMUNDSEN LLC (Indianapolis)
mwatts@amundsendavislaw.com